# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

TOWHEE A. SPARROW, JR.      *

v.      *      Civil No. CCB-16-1394

CITY OF ANNAPOLIS (MD), et al.      *

*******

## MEMORANDUM

On June 6, 2018, a jury returned a verdict in favor of the defendants, the City of Annapolis and several police officers, against the plaintiff, Towhee Sparrow, Jr., on various federal and state law claims arising out of Mr. Sparrow's detention by the officers on June 5, 2014. Mr. Sparrow, who was released without charges after eyewitnesses brought to the scene advised police he was not the man for whom they were looking, suffered injuries in the course of the detention. The cause and extent of those injuries, and the reasonableness of the officers' actions, were disputed throughout the trial.

Mr. Sparrow timely moved for a new trial on several grounds. The issues have been fully briefed and are discussed below.

1. Batson[1]

The defendants exercised only one of their four peremptory strikes. As proffered by defense counsel at the bench, this panel member, an African-American male, had previously served on a jury that, like this one, involved a question of mistaken identity. Counsel thus established a race-neutral reason for the strike. *See United States v. Singh*, 518 F.3d 236, 255 (4th Cir. 2008).

The gist of the plaintiff's Batson claim appears to be that, because defense counsel did not use his other peremptory strikes against Caucasian members on the panel, the jury complement was filled before reaching two African-American women who appeared later on the list.

---

[1] *Batson v. Kentucky*, 476 US 79 (1986).

Assuming without deciding that the plaintiff has not waived his Batson challenge, he has nevertheless offered no legal authority to support such a claim. Batson is intended to prevent purposely using peremptory strikes to remove African-Americans (or other members of a cognizable group) from a jury panel. Defense counsel proffered a race-neutral reason for the one strike he exercised. Plaintiff's counsel apparently suggests that defense counsel should have struck unobjectionable Caucasian jurors who happened to be higher on the list simply to ensure that the other African-American jurors were reached. While a more diverse panel may have been preferable, Batson does not contemplate or likely even permit such action.

2. Weight of the Evidence

To be awarded a new trial, the plaintiff must show that the jury's verdict "(1)[ ] is against the clear weight of the evidence; (2) is based on false evidence; or (3) will result in a miscarriage of justice." *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014) (internal citation and quotation marks omitted); Fed. R. Civ. P. 59(a).

The plaintiff has made no such showing. As noted, the cause and extent of his injuries were disputed. The jury was entitled to and did draw its own inferences based on testimony found to be credible. The plaintiff is not correct that the jury was required to accept the medical experts' opinions simply because the defendants proffered no medical evidence to the contrary. Rather, the defendants relied on inconsistencies between the plaintiff's version of events and those of others on the scene as well as inconsistencies in statements by the plaintiff to other medical providers. Because the testifying doctors' opinions rested on the accuracy of the plaintiff's statements, all made some time after June 5, 2014, the jury was entitled not to accept the doctors' causation opinions. For similar reasons, the court was not required to give the plaintiff's proffered jury instructions Nos. 8 and 9. Those proposals were either inaccurate or fairly covered by the instructions that were given.

Finally, the plaintiff proffers inadmissible hearsay through counsel's affidavit about what a co-worker of Juror No. 5 told counsel about what Juror No. 5 allegedly said during a conversation at work. Such evidence, even directly from the juror, would not be admissible to impeach the verdict. *See* Fed. R. Evid. 606(b)(1). The matters allegedly overheard do not rise to the level of extraneous prejudicial information, outside influence, or racial bias. Fed. R. Evid. 606(b)(2); *Pena-Rodriquez v. Colorado*, 137 S.Ct. 855, 869 (2017).[2] An internet search that revealed counsel's judicial office may well have been done after the verdict was returned; nor is it clear why this piece of immaterial information would have prejudiced the plaintiff in any way even if the search were done prior to the verdict. *Cf. United States v. Lawson*, 677 F.3d 629, 645 (4th Cir. 2012) (presuming prejudice where juror consulted dictionary for definition of a material term). The unsubstantiated hearsay proffered by plaintiff's counsel does not warrant any relief.

In summary, while it is both undisputed and unfortunate that the officers temporarily detained the plaintiff, who had done nothing wrong, a fully and fairly instructed jury was entitled to, and did, resolve credibility disputes in favor of the defendants. Their decision was not against the clear weight of the evidence, was not based on false evidence, and does not constitute a miscarriage of justice. The motion for new trial will be denied by a separate Order which follows.

/s/ CCB   2/15/19
Catherine C. Blake
United States District Judge

---

[2] As the Court explained:

> This version of the no-impeachment rule has substantial merit. It promotes full and vigorous discussion by providing jurors with considerable assurance that after being discharged they will not be summoned to recount their deliberations, and they will not be otherwise be harassed or annoyed by litigants seeking to challenge the verdict. The rule gives stability and finality to verdicts.

137 S.Ct. at 865.